UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DENIS MCCANN,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID JUPINA, et al.,<br><br>    Defendants. | Case No. 16-cv-03244-JSC<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL SUMMARY JUDGMENT MOTION**<br><br>Re: Dkt. No. 68 |

Plaintiff William D. McCann sues Defendants Dr. David Jupina and Tri Valley Orthopedics & Sports Medicine Group, Inc. for medical malpractice and fraud. Plaintiff alleges that Dr. Jupina negligently performed Plaintiff's total knee replacement, which resulted in infection; negligently failed to detect and treat the infection; and thereafter fraudulently concealed its existence. (Dkt. No. 62.) Now pending before the Court is Defendants' motion for partial summary judgment of Plaintiff's fraud claim. Having considered the parties' submissions, and having had the benefit of oral argument on September 7, 2017, the Court GRANTS Defendants' motion for partial summary judgment as no reasonable trier of fact could find that Dr. Jupina knew Plaintiff had an infection and intentionally concealed that fact from him.

**BACKGROUND**

On October 13, 2014, Plaintiff had knee replacement surgery. (Dkt. No. 69-1 at 64.) One week later Dr. Jupina physically examined the wound. *Id*. He noted some irritation on the skin but no infection. *Id*. Dr. Jupina was happy with Plaintiff's progress. *Id*.

Two weeks later, during Plaintiff's second visit, Dr. Jupina observed Plaintiff had a suture reaction, or a superficial infection. (Dkt. No. 69-1 at 24: 5-15.) He used a Q-tip-like swab to poke the area but did not find any tracking of the infection to a deeper level. (Dkt. No. 69-1 at 23:12-

20.) He noted there was no deep infection. (Dkt. No. 74-1 at 19.) Dr. Jupina placed Plaintiff on antibiotics to treat the superficial infection. (Dkt No. 24:13-15.). Plaintiff does not recall Dr. Jupina touching the suture with the Q-tip swab and believes he would have remembered had it occurred. (Dkt. No. 74-1 at 3:3-6.)

Two weeks later Plaintiff visited Dr. Jupina again, stating that he had completed the antibiotics but was feeling discouraged because he was feeling increasing pain while working with physical therapy. (Dkt No. 74-1 at 20.) Dr. Jupina noted that the wound was healing and there was some ongoing evidence of the superficial infection, but no deep infection. (*Id.*) Dr. Jupina attributed Plaintiff's increased pain to physical therapy exercises or rehabilitation. (Dkt. No. 69-1 at 30.)

Approximately two months after the surgery, in December 2014, Dr. Jupina saw that Plaintiff's wound was healing well with no signs of infection. (Dkt. No. 71-1 at 21.) He noted Plaintiff was exhibiting signs of improvement. (*Id.*) Dr. Jupina instructed Plaintiff to return in two months after Plaintiff's vacation. (*Id.*)

Plaintiff returned in February 2015 complaining of swelling, pain, and stiffness. (*Id.*) Dr. Jupina noted the knee wound healed, but had a long discussion with Plaintiff about his ongoing pain and stiffness. (*Id.*) Dr. Jupina informed Plaintiff that he had a genetic tendency to build up scar tissue. (Dkt. No. 69-3 at 16:9-10.) Dr. Jupina suggested a manipulation of the knee under anesthesia (Dkt. No. 71-1 at 21) and performed this manipulation approximately one week later. (*Id.* at 27.) The manipulation was a significant clinical event, but does not appear in Dr. Jupina's notes. (Dkt. No. 74-2 at 4:7-13.) After the manipulation, Dr. Jupina showed Plaintiff a video he had taken on his iPhone stating "look, full range of extension and flexion." (Dkt. No. 69-3 at 18:18-20.) At this time, February 2015, Plaintiff believes Dr. Jupina knew Plaintiff's knee was infected, but instead used the video on his iPhone to create an elaborate story that his knee was bound by scar tissue rather than by infection. (Dkt. No. 74-1 at 4:7-12.) Plaintiff also noticed Dr. Jupina, typically a man of few words, spent an inordinate amount of time describing Plaintiff's unique genetic disposition to rapidly created scar tissue. (Id. at 4:12-14.)

In May 2015, Plaintiff returned complaining of continued stiffness. (Dkt. No. 74-1 at 24.)

2

Dr. Jupina noted the wound healed, but that Plaintiff walked with a pronounced limp and his range of motion was quite limited. (*Id*.) Dr. Jupina had a long conversation with Plaintiff about his "complex situation," stating that Plaintiff should consider further evaluation with another orthopedic surgeon for a second opinion regarding "possible revision-type surgery." (*Id*.) Dr. Jupina noted that Plaintiff was not making any gains despite physical therapy, and offered to contact Plaintiff in the near future with further recommendations. (*Id*.)

Dr. Jupina had no question that Plaintiff was having problems with his knee, and wanted Plaintiff to get a second opinion. (Dkt. No. 69-1 at 46.) Dr. Jupina informed Plaintiff he had failed knee surgery. (Dkt. No. 69-3 at 21:15.) Dr. Jupina believed that Plaintiff's scar tissue had built up and not remitted. (*Id*. at 21:23-25.) Plaintiff recalls Dr. Jupina giving Plaintiff an unhappy look and stating, "I don't know what to do. So I'm going to refer you to another doctor for a second opinion." (*Id*. at 22:7-11.)

One month later Plaintiff saw Dr. Stine, another physician at the same facility. (Dkt. No. 74-1 at 27.) Dr. Stine noted that Plaintiff had persistent knee pain and dysfunction as a result of knee surgery. (*Id*.) Dr. Stine stated that Plaintiff appeared to have a "soft tissue problem" and ordered blood testing. (*Id*. at 28-30) If these tests showed elevated levels, Dr. Stine recommended aspiration of the knee. (*Id*. at 28.) Dr. Stine believed there was a chance the implant, while well positioned, needed to be revised for adequate release of scar tissue. (*Id*.) Dr. Stine instructed Plaintiff to follow-up with Dr. Jupina. (*Id*.)

Dr. Stine spoke with Dr. Jupina after seeing Plaintiff. (Dkt. No. 69-1 at 47:5-10.) Dr. Stine informed Dr. Jupina that Plaintiff's knee was stiff and needed some sort of additional treatment. (*Id*.) Dr. Stine also informed Dr. Jupina that he had ordered some lab work for Plaintiff. (*Id*.)

The following month, June 2015, Dr. Jupina reviewed the lab values, which he believed were elevated, and as a result performed an aspiration in order to rule out infection. (*Id*. at 47:11-22, 48:21-25, 49:1-2; 54:7-9.) The aspiration involved putting Plaintiff under an anesthetic, inserting a needle into his knee to draw fluid, and testing the fluid for infection. (Dkt. No. 69-3. at 25:19-22.) Plaintiff's aspiration was negative, but Dr. Jupina knew that generally speaking a

3

negative result does not rule out an infection. (Dkt. No. 69-1 at 51:4-11.) Plaintiff believes that Dr. Jupina knew Plaintiff had an infection. (Dkt. No. 74-1 at 5:6-7.) Plaintiff had the impression Dr. Jupina was acting like a "culpable person" during his aspiration visit because Dr. Jupina: (1) showed Plaintiff a picture of his "many children at a lake"; (2) his face was red; (2) he looked embarrassed or sheepish; (3) and when he inserted the needle Dr. Jupina said "this probably won't show anything." (*Id*. at 5:9-14.)

On July 8, Dr. Jupina's assistant sent Plaintiff an email stating: "No Infection, Everything on the labs was great."(Dkt. No. 74-2 at 7.) Dr. Jupina had informed his assistant to send Plaintiff an email stating that the aspiration results were negative, but Dr. Jupina does not specifically recall asking his assistant to tell Plaintiff there was no infection. (Dkt. No. 69-1 at 53:10-12.)

## DISCUSSSION

Defendants move for partial summary judgment of Plaintiff's fraud claim. The elements of fraud are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173 (2003). Plaintiff alleges Dr. Jupina knew Plaintiff's knee had a deep infection and concealed that fact from Plaintiff.. Suppression of a fact by one who is bound to disclose it may constitute fraud. Cal. Civ. Code § 1710(3); *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal.App.4th 858, 868 (2008).

### I. Fraudulent Concealment

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,* 6 Cal.App.4th 603, 612–613 (1992).

4

For fraudulent concealment to be actionable, defendant must have been under a duty to disclose the facts to plaintiff. *Hahn v. Mirda*, 147 Cal.App.4th 740, 745 (2007). "The doctor-patient relationship is a fiduciary one" and creates a duty to not misrepresent "the nature of a patient's medical condition." *Id*. The duty to disclose arises when two elements are present: (1) the material fact is known to the defendant; and (2) the defendant knows the plaintiff is unaware of the fact and cannot reasonably discover the undisclosed fact. *San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048, 1555-1556 (1995). A duty cannot arise when the fact is not actually known to the defendant. *See id*. ("[w]e are unwilling to impose upon a party a duty to disclose when, as here, that party cannot possibly satisfy the duty).

Here, based on the record before the Court, no reasonable trier of fact could find that Dr. Jupina knew Plaintiff had a deep tissue infection. No test result told Dr. Jupina that Plaintiff had a deep tissue infection; indeed, Plaintiff contends that in November 2015 Dr. Jupina did not even do the q-tip test to probe the wound. No expert has opined that based on what Dr. Jupina observed he had to know that Plaintiff had an infection despite not having any test results. There is no other evidence—such as Dr. Jupina's notes or testimony from others—that supports a finding that he knew Plaintiff had a deep tissue infection. To the contrary, Dr. Jupina referred Plaintiff for a second opinion which is inconsistent with Dr. Jupina knowing that Plaintiff had an infection and wanting to conceal that fact from Plaintiff. Plaintiff's emphasis on Dr. Jupina's failure to order lab tests that would have revealed the infection, despite Plaintiff having symptoms consistent with an infection, is a negligence argument. Plaintiff himself admits that Dr. Jupina gave him an unhappy look, told him he didn't know what was wrong with Plaintiff's knee, and wanted to refer Plaintiff to specialist so that specialist could do further testing to determine what was wrong. Showing Plaintiff photos of his family, having a red face, and exhibiting sheepish behavior is insufficient to show that Dr. Jupina actually knew Plaintiff had a deep tissue infection. Similarly, Dr. Jupina's alleged failure to report this lawsuit and Plaintiff's infection to his hospital do not support a finding that before he was advised of Plaintiff's subsequent diagnosis he knew Plaintiff had an infection. Plaintiff's fraud claim fails.

**CONCLUSION**

For the reasons described above, Defendants' motion for summary judgment against Plaintiff's fraud claim is GRANTED.

This Order disposes of Docket. No. 68.

**IT IS SO ORDERED.**

Dated: September 11, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge